Seth L. Goldstein, S.B.N. 176882

2100 Garden Road Suite H-8

Monterey, California 93940

Telephone (831) 372-9511

Fax        (831) 372-9611

Email:    slglawoffice@gmail.com

Attorney for Plaintiff


## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **SIPHANNAY S. BURNES**, | ) | Case No.: |
| Plaintiff, | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| vs. | ) | |
| | ) | |
| **CSU MONTEREY BAY; BRITT RIOS-ELLIS** | ) | |
| **ED OCHOA; CHRISTOPHER FOREST;** | **)** | |
| **MELANIE CHAVEZ; DARAMOLA CABRAL** | ) | **DEMAND FOR JURY TRIAL** |
| **KAREN ROTABI; WENDY SMITH** | | **)** |
| Defendant[s]. | ) | |
| | ) | |

### I.    **JURISDICTION AND VENUE:**

1.    Plaintiff brings this action pursuant to the 42 U.S.C.S. §1981, §2000e-1 through §2000e-15 as amended, and Californian Law.

2.    Jurisdiction over the federal claims if proper under 28 U.S.C.S. §1331. The Court has supplemental jurisdiction over state law claims, including tort claims, under 28 U.S.C.S. §1367.

Venue is proper in this Court under 28 U.S.C.S. §1391(b)(1) as the Defendants and Plaintiffs reside and conduct business in California.

### III.    GOVERNMENT TORT CLAIM COMPLIANCE

4.    Plaintiff timely filed their Government Tort Claim, on January 3, 2019 and it was improperly rejected as untimely on January 14, 2019. Plaintiff resubmitted the Claim on January 23, 2019, and there has been no response from the State.

5.    Defendant's conspiratorial conduct and Plaintiffs' harm was on-going at the time both claims were filed. The last act in the conspiracy before the claims were filed was by Defendant BRITT RIOS-ELLIS when she called a meeting with Plaintiff and refused to allow her attorney to attend the meeting on November 8, 2018.

6.    The acts alleged involved the concerted acts of the Defendants beginning in August of 2017 and carrying through to November of 2018, specifically involving Defendants ELLIS, FOREST, CABRAL, and ROTABI..

7.    The conduct gave rise to Defendants' concerted liability was the retaliation as described below.

8.    Therefore, because of the continuing acts of Defendants and the continuing nature of the harm was through and beyond November 13, 2018, Plaintiff has timely filed her claims. Plaintiff is excused from the timely complying with Government Tort Statutes of California because of Defendant's unclean hands and Defendant SMITH's misleading Plaintiff about her remedies and failure to timely investigate the claims. Her unconscionable concealment of the remedies available to Plaintiff and failure to timely conclude her investigation warrants relief under the claims statutes.

9.	Defendants are also estopped from relying n noncompliance with the claims presentation statutes to defeat these tort causes of action because of the concealment of the fact that the report was swept-under-the-rug.

10.	Defendants' actions were intended to cause Plaintiff not to pursue any claim or action that related to Defendant's wrongdoing.

11.	Plaintiff was ignorant of the true state of the facts that Defendant SMITH was covering up Defendant ELLIS' conduct.

12.	The same factors justifying application of the delayed discovery rule in the civil action support a finding of excusable neglect are applicable to the facts of this case.

13.	Plaintiff is further excused of timely compliance because the harm of the conspiratorial acts were continuing up and until the last act of Defendant ELLIS and Defendant CHAVEZ, which occurred on November 13, 2018.

14.	Plaintiff is further excused from timely compliance because Defendants concealed their acts and Plaintiff's delayed discovery was caused by that concealment.

**IV. INTRADISTRICT ASSIGNMENT**

15.	Because this lawsuit arises in Monterey County, it should be assigned to the San Jose Division of this Court.

**V. PARTIES**

16.	Plaintiff Siphannay S. Burnes is a resident of Monterey County, California.

17. Defendant California State University of Monterey Bay. A state university located in Monterey County, California.

28. Defendant Britt Rios-Ellis is a resident of Monterey County, California and at all times relevant herein is the Dean of the College of Health Sciences and Human Services at CSUMB.

29. Defendant Christopher Forest is a resident of Monterey County, California and at all times relevant herein is the program director of the Master of Science Physician's Assistant program under the Dean of the College of Health Sciences and Human Services at CSUMB.

30. Defendant Karen Rotabi is a resident of Monterey County, California and at all times relevant herein is the Chair of the Department of Social Work under the Dean of the College of Health Sciences and Human Services at CSUMB.

31. Defendant Daramola Cabral is a resident of Monterey County, California and at all times relevant herein is the Chair of the Department of Nursing under the Dean of the College of Health Sciences and Human Services at CSUMB and at all times relevant herein is the Chair of the Department of Social Work under the Dean of the College of Health Sciences and Human Services at CSUMB.

32. Defendant Wendy Smith is a resident of Monterey County, California and at all times relevant herein is the IX Investigator at CSUMB.

33. Defendant Melanie Chavez is a resident of Monterey County, California and at all times relevant herein is the Associate Director of Employee and Labor Relations at CSUMB.

//

## VI OVERVIEW:

1. This case involves an Asian-American adult female, Siphannay, who is employed as an entry-level "research analyst" under the direct and sole supervision of Dean of the College of Health Sciences and Human Services, Defendant BRITT RIOS-ELLIS (hereafter MRS. ELLIS). MRS. ELLIS stated in her court declaration, dated December 19, 2018, that she has been a California State University (CSU) Dean for 24 years, but MRS. ELLIS has only been employed as Dean for about four years with California State University of Monterey Bay. MRS. ELLIS was employed as a CSU Professor for 20 of her 24 years.

2. Siphannay and MRS. ELLIS are employees of the California State University of Monterey Bay, hereafter CSUMB, which is a state university located at 100 Campus Center on the former Fort Ord in Seaside, California (93955).

3. Siphannay is a graduate of Yale University and Boston University. MRS. ELLIS stated in Siphannay's August 2016-August 2017 performance evaluation that Siphannay is an exemplary CSUMB employee . MRS. ELLIS confirmed in the same evaluation thatSiphannay is a co-author and co-founder of the CSU's first and only Master of Science: Physician's Assistant program or MSPA.

4. Siphannay has a distinguished career in medical research having worked at such iconic and field leading organizations such as Yale's University of Medicine, Boston University's School of Public Health, and the United States Department of Veterans Affairs. Siphannay has been described by MRS. ELLIS as an excellent addition to the university and an example for young women to follow.

5. MR. FOREST, a newly hired program director, who formerly worked with MRS. ELLIS while MR. FOREST was employed by the University of Southern California and MRS. ELLIS worked as a professor at California State University Long Beach, intentionally blocked Siphannay from leaving her small office by standing in the way of the only exit and entrance to Siphannay's small office. MR FOREST ordered Siphannay to get up and come to him so he could show her how he wanted to be touched. Siphannay complied with the order. MR. FOREST embraced Siphannay with his arms over her shoulders and around her neck and the back of her head. MR. FOREST pressed Siphannay's body into his, pressing her breasts against his chest. After MR. FOREST left the office, Siphannay went to her direct supervisor for help. Her supervisor, MRS. ELLIS, did not take Siphannay seriously. MRS. ELLIS told Siphannay "that's just how Hispanic men are," and to "get over it." When Siphannay insisted on protection, MRS. ELLIS proceeded to retaliate against Siphannay because Siphannay complained to her and the Title IX office about the sexual harassment.

6. Siphannay suffered emotional trauma when nothing was done to prevent MR. FOREST from being alone with Siphannay. This occurred on several occasions from September 2017 through November of 2018.

7. Afterward and until November 2018, Siphannay was openly mocked and harassed by MRS. ELLIS and Department Chairs in staff meetings. One of those Chairs, Defendant DARAMOLA CABRAL, made offensive sexual comments during the meetings and MR. FOREST openly mocked Siphannay by walking up to everyone in the meeting and saying, loudly, that he wants to "greet them properly."

8.  Department chairs would call Siphannay several times a day via telephone and personally check to see if Siphannay was in her office and if she was performing her assigned tasks; tasks that had been reduced from attending medical review boards and co-authoring the Master of Science Physician's Assistants program to monitoring the college's rarely visited Facebook page and cutting and pasting articles from department Chairs into the college's even less popular newsletter.

9.  MRS. ELLIS issued Siphannay three (3) Letters of Reprimand, one of which was rescinded.  (1) (Rescinded) Issued for refusing to meet with MRS. ELLIS AND MS. CHAVEZ for "one-on-one" meeting without union or legal representation; (2) Issued for standing up for veteran's rights and challenging a student to think for themselves; (3) for objecting to a change in her work hours that would ensure she would be working alone with MR. FOREST.

10. MRS. ELLIS and Chairs actions and omissions caused Siphannay to become so anxious and stressed that she suffered a miscarriage as a result of their direct actions and was rushed to the emergency room for severe acute abdominal pains.

11. Siphannay was placed on medical leave by her primary care doctor as a result of MRS. ELLIS' unethical actions.

### VII. STATEMENT OF FACTS

12. All events took place on the California State University Monterey Bay (CSUMB) campus, in building "Ocean Hall," located at 2051 Inter-Garrison Road; Marina, CA 93933.

13. This case involves an Asian-American adult female, Siphannay, who is employed as an entry-level "research analyst" under the direct and sole supervision of MRS. ELLIS.

Siphannay and MRS. ELLIS are employees of CSUMB, which is a state university located at 100 Campus Center on the former Fort Ord in Seaside, California (93955).

14. According to MRS. ELLIS, Siphannay is an exemplary CSUMB employee. This is evidenced by at least five (5) emails that were authored by MRS. ELLIS and by Siphannay's initial CSUMB performance evaluation dated August 2016 through August 2017. Siphannay has a distinguished professional career history. Siphannay is a co-author and co-founder of the CSU's first and only Master of Science Physicians Assistant program or MSPA. On August 17, 2017, Siphannay was described by MRS. ELLIS as an excellent addition to the university and an example for young women to follow.

15. MRS. ELLIS described Siphannay as a "Wonderful addition to the College of Health Sciences and Human Services office," in a performance appraisal dated August 2016 to the August 2017 academic year.

16. In August of 2018, Siphannay received her second CSUMB performance appraisal from MRS. ELLIS. Siphannay was rated as "below average," even though MRS. ELLIS described Siphannay, prior to the events of August 7, 2017, as a team-oriented employee who has done wonderful work to bring together the college employees. In an email dated January 23, 2018, MRS. ELLIS called Siphannay the "steady rudder" and "source of calm" in the "storm," as the college prepared to launch the MSPA program.

17. The only change that took place between August of 2017 and August of 2018 was the incident between MRS. ELLIS' close friend and the person she hired to direct the first of its kind MSPA and Siphannay. That close friend is MR. FOREST and the incident is the day that MR. FOREST walked into Siphannay's office and ordered her to embrace him because he disapproved of Siphannay's passing greeting of "good morning."

18. MR. FOREST has admitted, under oath, that the facts to follow occurred on August 7, 2017: On the morning of August 7, 2017, Siphannay walked into the building in which she and Mr. Forest worked. As Siphannay passed by MR. FOREST'S office, she said "good morning," then she continued to her office without stopping.

19. MR. FOREST appeared in Siphannay's office a few minutes later. MR. FOREST stepped into Siphannay's office and stood in the small area, approximately 2' x 1', by her desk, which successfully blocked the only entrance and exit to the small, 10' x 12' furnished office.

20. It is critical to note the size of Siphannay's office and the make-up of the area in which Siphannay's office is located. The Dean's office is in a small building, with tight hallways. There are only three persons assigned to the office. Defendant ELLIS, who is often away from the building, Siphannay, and Crescenda Zuccaro. The office sees very few visitors.

21. The building that was built for the U.S. Army's armored division command staff. Pursuant to the U.S. Army's counter-terrorism measures of the day (1993), the rooms and common areas were small and oddly space so that a potential threat, such as a bomb, would not destroy/kill the entire staff. This floor plan remains unchanged.

22. The Dean's office area is approximately 25' x 15'. Siphannay's office is approximately 10' x 9'. The distance between Defendant FOREST'S office and Siphannay's office is approximately 20'. The Dean's office is often vacant of persons except Siphannay, who is based in her office. The only other office worker is Crescenda Zuccaro; the business administration personnel. Crescenda Zuccaro was in her office on the day of the incident, but it is not uncommon for Crescenda Zuccaro to be away for an hour or the entire day,

leaving Siphannay alone with Defendant FOREST, who often walks back and forth between his office, located across the small hall from the Dean's office, to the Dean's business office, which is located next to Siphannay's office.

23. MR. FOREST, the director of the MSPA program, ordered Siphannay, a low-level researcher, to get up and embrace him so he could show her how he should be greeted.

24. MR. FOREST testified under oath that he was wearing business attire, which is made from thin, breathable fabric. As Siphannay leaned in with her shoulders, under oath on December 21, 2018, that he put his arms around Siphannay and pulled her body tightly into his body.

25. MR. FOREST pressed his chest, stomach, groin, and upper thighs into Siphannay. This action pressed Siphannay's breasts, stomach, groin, and upper thighs into Mr. Forest's body. Siphannay stated her breasts were compressed into Mr. Forest's lower chest area and she could feel his penis through his pants pressed against her mid-stomach area, just above her groin area.

26. Mr. Forest did not release Siphannay from the embrace even after Siphannay let go of MR. FOREST and tried to step back.

27. Siphannay reported the awkward and humiliating event to her director supervisor, MRS. ELLIS, but MRS. ELLIS responded with a statement; "that's just how Hispanic men are."

28. MR. FOREST stated, the following day, that because he is Hispanic, he is "huggy." However, MR. FOREST did not offer an apology for his actions.

29. Siphannay attempted to resolve the issue with MRS. ELLIS approximately three (3) more times, but all of these attempts to seek protection or re-assignment failed. MRS. ELLIS

compelled Siphannay to work with MR. FOREST. MRS. ELLIS insisted that Siphannay "get over it," and ordered Siphannay to work with MR. FOREST.

30. MRS. ELLIS retaliated against Siphannay for reporting the August 7, 2017 incident by immediately removing her from the MSPA program and from community projects; projects she normally would have been assigned. MRS. ELLIS reduced Siphannay to monitoring the largely ignored Facebook page for the college and a small, rarely read college newsletter that catered to the staff of that specific college.

31. The more Siphannay approached MRS. ELLIS about her safety and her diminished work responsibilities, the more MRS. ELLIS fought back, using her position as the dean of the college to bully Siphannay into silence. MRS. ELLIS made it clear in an email: She was not going to let anything stand in the way of the progress of the college.

32. In October of 2017, Defendant ELLIS reported the incident between Defendant FOREST and Siphannay to the IX office on the CSUMB campus; a full two-months after the unlawful contact and before Siphannay had an opportunity to mediate the issues in the office with Defendant ELLIS. It was only after the IX Officer contacted Siphannay that Siphannay learned of Defendant ELLIS' actions.

33. In November of 2017, Siphannay took her complaint to the Title IX office where she met with WENDY SMITH, hereafter MS. SMITH. MS. SMITH was verbally aggressive, defensive of MRS. ELLIS; she told Siphannay that she would investigate MRS. ELLIS for failing to protect Siphannay in regards to the incident between Siphannay and MR. FOREST. MS. SMITH said she would also investigate MRS. ELLIS for the alleged retaliation against Siphannay for reporting the incident. MS. SMITH said that she would not investigate MR. FOREST because she did not believe there was an issue with a man

corning Siphannay in her office and being ordered to embrace the man against her will unless it occurred more than once. In addition, MS. SMITH said that MR. FOREST's words amounted to an apology so she would not pursue the allegations that involved MR. FOREST.

34. MS. SMITH did not complete the investigation. Ms. Smith failed to conduct a single interview, she failed to look for witnesses, and she failed to write the report. After approximately five months, Siphannay requested an update from MS. SMITH. MS. SMITH ordered Siphannay to provide her with a detailed account of what occurred between herself and MR. FOREST. However, Siphannay provided MS. SMITH with both a verbal account and a detailed written account of the incident when Siphannay met with MS. SMITH in October of 2017. After several requests, MS. SMITH closed the investigation, claiming Siphannay was "uncooperative." MS. SMITH then provided Siphannay with a copy of the investigation completed by MS. SMITH. After approximately five months of investigation, MS. SMITH only managed to complete the face sheet that is completed during the intake portion of the investigation.

35. MS. SMITH failed to inform Siphannay, during the intake interview, that MS. SMITH enjoyed a close friendship with MRS. ELLIS. In fact, MS. SMITH traveled with MRS. ELLIS to Mexico and stayed in MRS. ELLIS' large and expensive home, located on the Yucatan Peninsula in Mexico. MS. SMITH often traveled with MRS. ELLIS and they spent time together at dinners and other recreational activities. Siphannay learned MS. SMITH's and MRS. ELLIS' close friendship about four months after Siphannay reported the MR. FOREST incident to MS. SMITH. As soon as Siphannay uncovered the friendship, Siphannay lost confidence in MS. SMITH to conduct in unbiased

investigation into MRS ELLIS' actions. Siphannay requested another IX Officer to investigate the matter, but MS. SMITH only responded with a single word in an email. MS. SMITH wrote: "no."

36. Defendant ELLIS employed the help of two (2) Department Chairs (KAREN ROTABI and DARAMOLA CABRAL) and the MSPA program director, Defendant FOREST to harass Siphannay about the small internal college newsletter than only served the staff. College staff were, according to MRS. ELLIS, responsible for writing and editing their own articles for the college newsletter. After the articles were complete, college staff were told to email the finished product to Siphannay so Siphannay could paste it into the college newsletter format. However, when serious grammatical and spelling errors were discovered, Defendant ROTABI and Defendant CABRAL would blame Siphannay. Both Defendant ROTABI and Defendant CABRAL said Siphannay should have seen the errors and fixed them. However, in an email dated in February 2018, Siphannay was ordered by MRS. ELLIS not to edit or fix any of the articles that were submitted for the newsletter.

37. Starting in December of 2017 and through November of 2018, Defendant ROTABI, Defendant CABRAL, and Defendant FOREST would email and call Siphannay several times a day to request updates on the college newsletter. It is important to note that Siphannay does not work for or under the Chairs. Siphannay works for and directly under MRS. ELLIS; Siphannay's only supervisor and performance rater.

38. MRS. ELLIS' orders were often unclear and unspecific. MRS. ELLIS would often verbally reprimand Siphannay for not completing a task the way she envisioned the task. When Siphannay asked MRS. ELLIS to clarify her confusing and often conflicting

orders, Mrs. Ellis responded by getting physically and verbally angry. This made Siphannay and her co-worker, Crescenda Zuccaro (hereafter Mrs. Zuccaro) immediately fearful of MRS. ELLIS.

39. On February 6, 2018, MRS. ELLIS became so angry, Siphannay and Mrs. Zuccaro called CSUMB Police via 9-1-1.

40. On February 6, 2018, MRS. ELLIS got angry at Siphannay for asking a question regarding another confusing and conflicting order. MRS. ELLIS came out of her office in a rush, her face was red, her eyes were red and watery and her jaw was set, teeth clenched. MRS. ELLIS' arms were held straight down with her hands clenched into tight fists that caused her fingers to appear pale in color compared to the intense red of the top of her hands. MRS. ELLIS walked, straight legged and with heavy footsteps, to the area outside of Siphannay's office and screamed at Siphannay and Mrs. Zuccaro until her voice went out. MRS. ELLIS shook her fists and seemed so angry that it scared Siphannay and Mrs. Zuccaro to the point that they called 9-1-1 for police assistance, fearing MRS. ELLIS would become physical violent. MRS. ELLIS walked, straight legged and with heavy footsteps, back to her office and slammed the door. Police arrived just a few minutes after Siphannay called 9-1-1. A CSUMB police sergeant told Siphannay and Mrs. Zuccaro that they, the police, would complete a report to document the incident. MRS. ELLIS left the office area for the afternoon.

41. The following day, after the police were called, MRS. ELLIS invited the CSUMB Chief of Police, Newitt Lawson, hereafter Mr. Lawson, to her office. MRS. ELLIS told Siphannay and Mrs. Zuccaro that she and her "good friend" Mr. Lawson were going to

go to lunch. When MRS. ELLIS returned, she said she and Mr. Lawson had a "great time," and she denied that police were ever called to the dean's office the previous day.

42. MRS. ELLIS' actions, in regards to her constant contact with Mr. Lawson, led Mrs. Zuccaro and Siphannay to believe that Mrs. Ellis would use her friendship with Mr. Lawson as a physical threat against them and an intimidation tool.

43. Siphannay went to the CSUMB police office on February 8, 2018. Siphannay asked one of the CSUMB police officers for a copy of the report, but no report had been filed nor was there a record of the contact on the daily patrol logs. While a report did not exist at CSUMB police, a record of the incident was recorded at the Monterey County Communications Center (9-1-1 center) on the Computer Aided Dispatch (CAD) system.

44. Siphannay continued to be the victim of mockery and abuse at the hands of Defendant ELLIS, Defendant CABRAL, Defendant FOREST, and Defendant ROTABI. Siphannay was openly mocked in staff meetings. Meetings that Siphannay recorded and Defendant ELLIS approved. These meetings in which Siphannay was openly mocked started in the spring of 2018 through October of 2018.

45. Siphannay's symptoms of stress and anxiety continued through the spring of 2018 through the summer.

46. On August 24, 2018, Defendant ELLIS issued Siphannay a Letter of Reprimand for refusing to meet one-on-one with herself and Defendant CHAVEZ. Siphannay refused to meet with ELLIS and CHAVEZ because ELLIS told Siphannay that she could not bring a union representative or a lawyer to the meeting.

47. On September 11, 2018, Defendant ELLIS issued Siphannay another Letter of Reprimand (LOR). Defendant ELLIS issued this LOR because Siphannay challenged a

student employee to think for herself and do research into why she believes what she believes in regards to her beliefs (political and scientific) in April of 2018. Defendant Ellis incorrectly stated in the LOR that the student employee quit suddenly because she felt intimidated by Siphannay for challenging her to think for herself. The student employee spoke with Defendant ELLIS in April of 2018 then she continued to work with Siphannay from April 2018 through June of 2018 when the student/employee left CSUMB for another job. At no time did Defendant ELLIS or the student employee cite any issues between Siphannay and the student employee.

48.  In the same September 11, 2018 LOR, Defendant ELLIS stated that she issued Siphannay the LOR because Siphannay supported veteran's rights. Defendant ELLIS stated that challenging students to think for themselves and openly supporting veterans was not the opinion of the Dean's Office and should be discouraged.

49. In October of 2018, approximately a year after MRS. ELLIS began her retaliating against Siphannay, Siphannay suffered a miscarriage. Siphannay suffered severe acute pain in her abdominal area and intense cramping. She suffered an unusual amount of bloody discharge along with a stabbing pain in her right side. Siphannay sought out medical care from her primary care physician, Dr. Joanne Oppenheim. Dr. Oppenheim diagnosed the issue as a miscarriage event that was likely brought on by the stress and anxiety from her work conditions. As a result of the miscarriage, Siphannay became depressed and extremely anxious about going to work. Siphannay suffered headaches every day and stomach issues as a result of the anxiety. Siphannay's blood pressure also increased to dangerous levels, which Dr. Oppenheim stated was a direct result of Siphannay's work environment.

50. In late October 2018, Siphannay suffered a severe acute medical event. Siphannay was rushed to the emergency room at the Community Hospital of the Monterey Peninsula (CHOMP). Siphannay suffered from severe acute pain in the left and right side of her lower abdominal area. Her pain level continued to increase as the day wore on and by the time Siphannay was seen at the ER, she was running a temperature of about 100 degrees. Siphannay complained of feeling cold and she shivered. Siphannay was also spotting and bleeding from her vaginal area. Siphannay suffered from sudden and painful cramps, which she described as "intense contractions." The ER visit was reported to Dr. Oppenheim who stated the event was the result of Siphannay's stressful work environment.

51. On October 25, 2018, Defendant ELLIS issued Siphannay another LOR. Defendant ELLIS issued Siphannay a reprimand for refusing to change her contractual work hours. When Siphannay was hired in August of 2016, Siphannay signed a contract with the university that her work hours were 9:00AM to 5:30PM, Monday through Friday with occasion weekends. Defendant ELLIS changed Siphannay's contractual work hours, without Siphannay's consent, in October of 2018 from what she incorrectly cited was 9:30AM to 6:00PM to 10:00AM to 6:30PM. Siphannay stated the hours would ensure that she was alone with Defendant FOREST. Defendant ELLIS did not respond to the concerns and, instead, issued Siphannay a LOR for refusing to break from her contractual work hours to the new hours that would ensure Siphannay and Defendant FOREST were alone in the Dean's office area. It should also be noted that Defendant FOREST had master keys to all of the offices in the Dean's building. This was authorized by Defendant ELLIS.

52. On November 6, 2018, at about 4:50 PM, Defendant ROTABI and Defendant ELLIS walked into the Dean's office. Defendant ELLIS immediately left the office area and stayed in the hallway outside of the Dean's office while Defendant ROTABI "marched" into Siphannay's office. Defendant ROTABI walked into Siphannay's office and pointed at her and in an angry voice, Defendant ROTABI demanded to know what Siphannay was working on and if she finished the newsletter (Defendant ROTABI's 10th request to know about the newsletter that day). Defendant ROTABI noticed Siphannay's husband, who was standing in Siphannay's office, and immediately left the area.

53. On November 3, 2018, Defendant ELLIS contacted Siphannay and Mrs. Zuccaro. Defendant ELLIS arranged for a staff meeting then, at the last minute, she changed the meeting to a meeting with herself and Defendant CHAVEZ. Siphannay agreed to meet with Defendant ELLIS and Defendant CHAVEZ, but she wanted to bring her attorney. Defendant CHAVEZ and Defendant ELLIS refused to meet with Siphannay since she wanted her lawyer present.

54. On November 6, 2018, Defendant ROTABI emailed Defendant ELLIS and CSUMB Police Chief Newitt Lawson. Defendant ROTABI claimed that Siphannay's husband suffered from post-traumatic stress disorder (PTSD) and was a serious threat to staff, students, and the public. Defendant ROTABI demanded CSUMB Police Chief ban Siphannay's husband from the campus "immediately" because Siphannay's husband, a combat veteran whom she incorrectly believed had PTSD, was so dangerous.

55. Siphannay, feeling overwhelmed by the number of phone calls, emails, and aggressive office visits by Defendant CABRAL, Defendant ROTABI, Defendant ELLIS, and Defendant FOREST, filed a temporary restraining order (TRO) against the previously

mentioned persons, with the exception of Defendant ELLIS. The TRO was granted and a permanent restraining order hearing was set for December 21, 2018.

56. On November 12, 2018, Defendant ELLIS and Defendant CHAVEZ attempted to set up another meeting with Siphannay. When Siphannay agreed to the meeting, Defendant ELLIS told Siphannay that she could not come to the meeting with her lawyer. Defendant ELLIS changed her mind later that day and said she could bring her attorney to the meeting.

57. On November 13, 2018, Dr. Oppenheim meet with Siphannay at Dr. Oppenheim's office. Dr. Oppenheim determined, after reviewing Siphannay's medical and work history, that Siphannay was suffering physically and mentally as a result of Defendant ELLIS', Defendant CABRAL's, Defendant FOREST's, and Defendant ROTABI's direct actions. Dr. Oppenheim told Siphannay that if Siphannay continued to work at that college under those persons, that she feared Siphannay's physical and mental health symptoms would worsen. Dr. Oppenheim placed Siphannay on medical leave, effectively immediately to prevent Siphannay from suffering any more harm.

58. On November 18, 2018, Defendant ELLIS and Defendant CHAVEZ arranged for a meeting with Siphannay and her attorney at 11:30AM. However, Defendant ELLIS told Siphannay and her attorney that she only had a few minutes and that she had to leave soon for a "more important" meeting. Siphannay and her lawyer did not meet with Defendant ELLIS or Defendant CHAVEZ that day.

59. Defendant ELLIS continued to insist that Siphannay "get over it," and "grow past it," from September 2017 through November of 2018.

60. CSUMB staff member Jennifer Geertsen overheard Defendant ELLIS talk about Siphannay to staff members that she knew worked outside of the College of Health Sciences and Human Services. Ms. Geertsen stated she overheard these conversations with different staff members on different occasions starting in October of 2017 through October of 2018. Defendant ELLIS stated things like, "Siphannay is such a pain in the ass," "She needs to get over it and work with him," "Siphannay is a horrible worker. She's so difficult," and "I have to correct everything she does all the time."

61. Defendant ELLIS told Siphannay, several times from August 2017 through November 2018, that Siphannay needed to "get over it," and "learn to work" with Defendant FOREST when Siphannay told Defendant ELLIS that she was afraid of Defendant FOREST. Defendant ELLIS ignored Siphannay's pleas for protection and re-assignment.

62. Defendant ELLIS invited Defendant FOREST to all of the Chair's meetings that Defendant ELLIS knew Siphannay was going to attend from August of 2017 through November of 2018. It's important to note that Defendant FOREST is not a Chair and had no valid reason to be at the Chairs meeting. If not for Defendant ELLIS, Defendant FOREST would not have been in attendance. See sub-section 76 for Defendant ELLIS' response to Siphannay's statement that she is afraid of Defendant FOREST.

63. As a result of the Defendant's direct actions, Siphannay started to experience night terrors, startles, and panic attacks. These issues started in September of 2017 and continued to worsen through November of 2018. Siphannay also suffered severe acute anxiety attacks. Siphannay feared going to work and developed stress headaches that left her bedridden on her days off and as soon as she got home from work. Siphannay's blood

pressure rose to dangerous levels as well through the August 2017 through November 2018 time frame.

## VIII. CLAIMS

### FIRST CLAIM FOR RELIEF
### Gender Discrimination in Violation of
### Title VII of the Civil Rights Act, as Amended;
### California Civil Code 51 Unruh Civil Rights Act
### (All Defendants)

64. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

65. All defendants discriminated against Siphannay because she was a woman who reported she was sexually harassed.

66. The above-described misconduct perpetrated by the Defendant's constituted harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), as amended ("Title VII of the Civil Rights Act") and California Civil Rights Act, California Civil Code 51. Defendants are therefore liable to Plaintiff for all her statutory remedies, including actual, consequential and punitive damages and attorney's fees.

67. Defendants' discrimination and retaliation against Siphannay violated Siphannay's rights under Title VII of the Civil Rights Act and California Civil Code 51, the Unruh Civil Rights Act. Defendants are therefore liable to Plaintiff for all of her statutory remedies, including actual, consequential and punitive damages and attorney's fees.

68. As a direct result of the aforesaid conduct by the Defendants, Siphannay has suffered and will continue to suffer embarrassment, humiliation and loss of employment and other

damages. Further, as a direct result of the aforesaid conduct of the Defendants, Siphannay has been prevented from performing her normal daily activities and obtaining the full enjoyment of life and have sustained loss of earnings and will continue to incur other related damages.

69. The conduct of the Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Siphannay's rights, feelings, knowing that their actions or inactions would cause Siphannay to suffer economic loss and emotional damage.

70. WHEREFORE, on First Claim, Siphannay requests that judgment be entered against Defendants, jointly and severally, awarding her compensatory damages, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such further relief as the Court deems proper.

## SECOND CLAIM FOR RELIEF

### RETALIATION

### TITLE VII CIVIL RIGHTS ACT; CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT; CALIFORNIA GOVERNMENT CODE §12940

### (All Defendants)

71. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

72. The above-described misconduct/conduct perpetrated by the Defendants constituted the retaliation. Defendants are therefore liable to Siphannay of all of her statutory remedies, including actual, physical and mental health damages, consequential and punitive damages and attorney's fees.

73. Defendant ELLIS emailed Siphannay in July of 2018. Defendant ELLIS wrote that she would not let anything stand in the way of the progress of the college, which referenced the incident between Defendant FOREST and Siphannay.

74. As a direct result of the aforesaid conduct by the Defendants, Siphannay has suffered and will continue to suffer humiliation, embarrassment, loss of employment, and other damages. Further, as a direct result of the aforesaid conduct of the Defendant, Siphannay has been prevented from performing her normal daily activities and obtaining the full enjoyment of life and have sustained loss of earnings and will continue to incur other related damages.

75. The conduct of the Defendants set forth above was intentional, willful, malicious, reckless, wanton, and/or grossly negligent and was undertaken with a total disregard for Siphannay's rights, feelings, cultural and religious beliefs, knowing that the Defendants' actions/inactions would cause Siphannay to suffer loss and emotional damage.

76. WHEREFORE, on Second Claim, Siphannay Burnes requests that judgment be entered against Defendant, awarding her compensatory and punitive damages, together with pre-judgment interests, post-judgment interest, costs, attorney's fees and such further relief as the Court deems proper.

**THIRD CLAIM FOR RELIEF**

**SEXUAL HARASSMENT**

**CALIFORNIA CIVIL CODE § 51.9**

**(Mr. Forest-Defendant)**

1. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

2.  On August 7, 2017, as described above, MR. FOREST, acting individually, intentionally engaged in menacing conduct directed toward Siphannay causing her to have reason to believe that MR. FOREST would inflict immediate bodily injury upon her person.

3.  In fact, MR. FOREST did intentionally apply physical force to Siphannay's person in a rude, insolent, and sexual manner.

4.  MR. FOREST, the director of the Master of Science Physician's Assistant's program, employed in the College of Health Sciences and Human Services, left his office, crossed a hallway, crossed into the dean's office and through the common area and walked into Siphannay's office. Once inside Siphannay's office, MR. FOREST ordered Siphannay to perform the act.

5.  MR. FOREST pressed Siphannay's body up against his, providing him an intimate and elongated contact with Siphannay's breasts and her stomach and groin area. Both Siphannay and MR. FOREST were also wearing business clothing, which is made from thin fabric.

6.  All of the foregoing has caused Siphannay to suffer shock, humiliation, embarrassment and extreme and severe emotional distress and other consequential damages, for which Defendant FOREST is fully liable Defendant FOREST subsequently ratified and condoned this egregious misconduct by, among other things, failing to apologize to Siphannay and by failing to provide her a safe work environment.

7.  The above-described sexual harassment inflicted upon Siphannay by Defendant FOREST was undertaken by Defendant FOREST intentionally, willfully, maliciously, recklessly, wantonly, negligently and/or with deliberate indifference to her rights, feelings, cultural, and religious beliefs, thereby entitling her to an additional award of punitive damages.

8.  WHEREFORE, on Third Claim, Siphannay Burnes requests that judgment be entered against Defendant, awarding her compensatory and punitive damages, together with pre-judgment interests, post-judgment interest, costs, attorney's fees and such further relief as the Court deems proper.

**FOURTH CAUSE OF ACTION**

**FALSE IMPRISONMENT**

**California Penal Code §236**

**(Mr. Forest-Defendant)**

9.  Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

10. Defendant FOREST knew or reasonably should have known that he was standing in the way of the only entrance and/or exit to the office. Defendant FOREST was so big Siphannay was trapped in the room when Defendant FOREST blocked the doorway.

11. Defendant FOREST's actions were directed at Siphannay causing her to feel as if she was not free to leave the room without severe and immediate consequences to include bodily injury upon her person. Siphannay did not consent to the Defendant's actions.

12. Defendant FOREST entered Siphannay's small office and stepped into the office area by approximately 1'. There is only a 2.5' gap between Siphannay's office doorway and her desk. Defendant's placement put him out of view of persons in the office area and effectively blocked the only entrance and exit to the small, furnished office. \Defendant FOREST did not have permission to enter Siphannay's office. Defendant took it upon himself to come into the office and instruct Siphannay how he wanted to be touched.

13. Defendant FOREST continued to block the door way for an additional one (1) to two (2) minutes.

14. As a result of Defendant FOREST's actions upon Siphannay by Defendant, Siphannay has suffered and will continue to suffer humiliation, embarrassment, loss of her preferred career, economic damages and did or could have caused damages to Siphannay's reputation in the research and medical community for which Defendant is severally liable to Siphannay. and other damages.

15. This action, false imprisonment, upon Siphannay was undertaken by Defendant intentionally, willfully, maliciously, recklessly, wantonly, negligently, and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award od punitive damages.

16. WHEREFORE, on Fourth Claim, Siphannay Burnes requests that judgment be entered against Defendant, awarding her compensatory and punitive damages, together with pre-judgment interests, post-judgment interest, costs, attorney's fees and such further relief as the Court deems proper.

**FIFTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(All Defendants)**

17. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

18. In performing the acts herein described. The DEFENDANTS intended (or acted with negligent and/or reckless indifference for the consequences of their acts and/or omissions) and/or knew or should have known that their acts and omissions as described above would cause Siphannay to suffer from severe and extreme emotional distress. Defendant ELLIS misconduct was ratified and adopted by Defendants, her accomplices.

19. As a result of this outrageous conduct and infliction of emotional distress upon Siphannay by DEFENDANTS, Siphannay miscarried in October of 2018. Siphannay suffered a series of intense cramps in her lower abdominal area. She suffered an unusual amount of discharge from her vaginal area along with stabbing pain in her right side. The miscarriage left Siphannay depressed and increased her anxieties about work; Siphannay feared losing another child due to the stress of working under Defendant ELLIS. So much so that she refused to attempt a second pregnancy.

20. As a result of the outrageous conduct and infliction of emotional distress upon Siphannay by DEFENDANTS, Siphannay fell ill in October of 2018 as a direct result of Defendant ELLIS' direct and intentional actions, which sent her to the emergency room at the Community Hospital of the Monterey Peninsula (hereafter CHOMP). Siphannay suffered from severe acute pain in the left and right side of her lower abdominal area. Her pain level continued to increase as the day wore on and by the time Siphannay was seen at the ER, she was running a temperature of about 100 degrees. Siphannay complained of feeling cold and she shivered. Siphannay was also spotting and bleeding from her vaginal area. Siphannay suffered from sudden and painful cramps, which she described as "intense contractions."

21. As a direct result of her treatment at work, Siphannay suffered from panic attacks as well as acute anxiety in situations that she perceived she had little control over. She suffered from insomnia, nausea, and had trouble focusing on work or home projects. Siphannay suffered from acute panic attacks at work and startles as well as feelings of dread. Siphannay complained of daily headaches and muscle aches and cramping.

22. Siphannay has suffered embarrassment, humiliation, loss of her preferred career, economic damages and severe and extreme emotional distress, for which Defendants are jointly and severally liable to Siphannay.

23. This infliction of emotional distress upon Siphannay was undertaken by the DEFENDANT's intentionally, willfully, maliciously, recklessly, wantonly, negligently and/or with deliberate indifference to her rights, feelings, religious beliefs, and cultural beliefs, thereby entitling her to an additional award of punitive damages.

24. WHEREFORE, on Fifth Claim, Siphannay Burnes requests that the judgment be entered against Defendants, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interests, post-judgment interest, costs and attorney's fees and such further relief as the Court deems proper.

## SIXTH CAUSE OF ACTION

### Civil Conspiracy to Intentionally Inflict Emotional Distress, Harass and Retaliate Against Plaintiff

### (All Defendants)

25. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

26. In doing the acts described herein, all defendants acted in concert, consulting and conferring with one-another, jointly engaging in said acts, thereby conspiring to commit the civil wrongs alleged herein. Defendant UNIVERSITY is liable to Plaintiff based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

27. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre-

and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper.

## SEVENTH CAUSE OF ACTOIN
### Negligence Per Se
### (Mr. Forest-Defendant)

28. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

29. Defendant FOREST committed sexual battery, that constitutes a felony pursuant to California Penal Code (CPC) § 243.4.

30. Additionally, under California Evidence Code § 669, the negligence of Defendant FOREST may be presumed, for the reason that:

31. Defendant FOREST violated the aforementioned statutes (Unruh Act, Title VII);

32. The violations proximately caused injury to plaintiff;

33. The injuries to plaintiffs were occurrences of the nature which the statutes were designed to prevent; and

34. Plaintiff is a member of the class of persons for whose protection these statutes were adopted.

35. AS a result of the negligence of Defendant FOREST, Siphannay was injured in an amount according to proof.

36. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper.

## EIGHTH CLAIM FOR RELIEF

### Sexual Harassment

### (Mr. Forest-Defendant)

37. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

38. Defendant FOREST, intentionally touched intimate parts of Siphannay, resulting in sexually offensive contacts including, but not limited to, touching her breasts through her clothing and pressing his penis against her pelvis through their clothing.

39. The acts and omissions by Defendant FOREST as alleged herein, were intentional and caused Siphannay to suffer anguish and serious physical and emotional distress. The acts and omissions of Defendant were in wanton and reckless disregard of the consequences to Siphannay.

40. As a result of said Defendants' intentional acts, Siphannay has suffered as alleged herein, and is entitled to damages in an amount according to proof.

41. Defendant FOREST did the acts alleged herein maliciously, fraudulently, oppressively, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

42. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper.

### NINTH CLAIM FOR RELIEF
### General Negligence
### (All Defendants)

77. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein. DEFENDANTS had statutory and common law duties not to interfere with Plaintiff's civil rights.

78. DEFENDANTS's acts and omissions as set forth herein breached those duties. Defendant UNIVERSITY is liable to Plaintiff due to respondeat superior liability.

79. Additionally, under California Evidence Code § 669, the negligence of Defendants may be presumed, for the reason that:

80. Defendants, and each of them, violated the civil rights statutes of this State and the United States;

    i.   The violations proximately caused injury to plaintiff;

    ii.   The injuries to plaintiff were occurrences of the nature which the statutes are designed to prevent; and

    iii.   Plaintiff is a member of the class of persons whose protection these statutes were adopted.

43. All Defendants knew or should in the exercise of reasonable care have known, that the foregoing conduct would cause plaintiff to suffer severe emotional distress.

44. As stated herein, all Defendants were agents of UNIVERSITY. The conduct of Defendants as herein alleged, was done within the course and scope of that agency, and the aforementioned acts were foreseeable and committed by use of their authority as by use of their authority as managerial staff of UNIVERSITY, such that Defendant UNIVERSITY is liable to plaintiff based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

45. Defendant UNIVERSITY despite actual knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved and ratified the acts, omissions and misconduct of its agents and employees.

46. In doing each and all of the acts and omissions herein alleged, all Defendants engaged in a course of conduct which was grossly negligent, extreme and outrageous. All Defendants engaged in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to plaintiff.

47. As a result of the negligence of Defendants, and each of them, plaintiff was injured in the amount of proof.

48. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper

**TENTH CLAIM FOR RELIEF**
**Negligent Hiring**
**(All Defendants)**

49. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

50. Defendant UNIVERSITY had a statutory and common law duties, screen, test, and hire competent individuals who would not discriminate against a woman because of her sex.

51. Defendant's acts and omissions as set forth herein breached those duties. Defendant UNIVERSITY is liable to Plaintiff due to respondeat superior liability.

52. Additionally, under California Evidence Code § 669, the negligence of defendants may be presumed for the reason that:

      i.  Defendants, and each of them, violated the civil rights statutes of this State and the United States;

     ii.  The violations proximately caused injury to plaintiff;

    iii.  The injuries to plaintiff were occurrences of the nature which the statutes are designed to prevent; and

    iv.  Plaintiff is a member of the class of persons whose protection these statutes were adopted.

53. All Defendants knew or should in the exercise of reasonable care have known, that the foregoing conduct would cause plaintiff to suffer severe emotional distress.

54. As stated herein, all Defendants were agents of UNIVERSITY. The conduct of Defendants as herein alleged, was done within the course and scope of that agency, and the aforementioned acts were foreseeable and committed by use of their authority as by use of their authority as managerial staff of UNIVERSITY, such that Defendant UNIVERSITY is liable to plaintiff based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

55. Defendant UNIVERSITY despite actual knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved and ratified the acts, omissions and misconduct of its agents and employees.

56. In doing each and all of the acts and omissions herein alleged, all Defendants engaged in a course of conduct which was grossly negligent, extreme and outrageous. All Defendants engaged in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to plaintiff.

57. As a result of the negligence of Defendants, and each of them, plaintiff was injured in the amount of proof.

58. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper

**ELEVENTH CLAIM FOR RELIEF**
**Negligent Retention**
**(All Defendants)**

59. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

60. Defendant UNIVERSITY had a statutory and common law duties, screen, test, and hire competent individuals who would not discriminate against a woman because of her sex.

61. When Plaintiff complained to Defendant ELLIS and the University, nothing was done to investigate or discipline the culpable parties.

62. When Plaintiff complained to the Title IX officer at the University, nothing was done to investigate or discipline the culpable parties.

63. Defendant's acts and omissions as set forth herein breached those duties. Defendant UNIVERSITY is liable to Plaintiff due to respondeat superior liability.

64. Additionally, under California Evidence Code § 669, the negligence of defendants may be presumed for the reason that:

      i. Defendants, and each of them, violated the civil rights statutes of this State and the United States;

      ii. The violations proximately caused injury to plaintiff;

      iii.   The injuries to plaintiff were occurrences of the nature which the statutes are designed to prevent; and

      iv.   Plaintiff is a member of the class of persons whose protection these statutes were adopted.

65. All Defendants knew or should in the exercise of reasonable care have known, that the foregoing conduct would cause plaintiff to suffer severe emotional distress.

66. As stated herein, all Defendants were agents of UNIVERSITY. The conduct of Defendants as herein alleged, was done within the course and scope of that agency, and the aforementioned acts were foreseeable and committed by use of their authority as by use of their authority as managerial staff of UNIVERSITY, such that Defendant UNIVERSITY is liable to plaintiff based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

67. Defendant UNIVERSITY despite actual knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved and ratified the acts, omissions and misconduct of its agents and employees.

68. In doing each and all of the acts and omissions herein alleged, all Defendants engaged in a course of conduct which was grossly negligent, extreme and outrageous. All Defendants engaged in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to plaintiff.

69. As a result of the negligence of Defendants, and each of them, plaintiff was injured in the amount of proof.

70. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre-

and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper

### TWELVTH CLAIM FOR RELIEF
### Negligent Training
### (All Defendants)

71. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

72. Defendant UNIVERSITY had a statutory and common law duties, screen, test, and hire competent individuals who would not discriminate against a woman because of her sex.

73. The conduct described herein would not have occurred had the University properly trained its employees.

74. Such conduct does not occur absent the negligence of the UNIVERSITY.

75. When Plaintiff complained to the Title IX Officer at the University, nothing was done to investigate or discipline the culpable parties.

76. Defendant's acts and omissions as set forth herein breached those duties. Defendant UNIVERSITY is liable to Plaintiff due to respondeat superior liability.

77. Additionally, under California Evidence Code § 669, the negligence of defendants may be presumed for the reason that:

   1) Defendants, and each of them, violated the civil rights statutes of this State and the United States;

   2) The violations proximately caused injury to plaintiff;

   3) The injuries to plaintiff were occurrences of the nature which the statutes are designed to prevent; and

    4)  Plaintiff is a member of the class of persons whose protection these statutes were adopted.

78. All Defendants knew or should in the exercise of reasonable care have known, that the foregoing conduct would cause plaintiff to suffer severe emotional distress.

79. As stated herein, all Defendants were agents of UNIVERSITY. The conduct of Defendants as herein alleged, was done within the course and scope of that agency, and the aforementioned acts were foreseeable and committed by use of their authority as by use of their authority as managerial staff of UNIVERSITY, such that Defendant UNIVERSITY is liable to plaintiff based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

80. Defendant UNIVERSITY despite actual knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved and ratified the acts, omissions and misconduct of its agents and employees.

81. In doing each and all of the acts and omissions herein alleged, all Defendants engaged in a course of conduct which was grossly negligent, extreme and outrageous. All Defendants engaged in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to plaintiff.

82. As a result of the negligence of Defendants, and each of them, plaintiff was injured in the amount of proof.

83. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper.

**THIRTEENTH CLAIM FOR RELIEF**
**Negligent Supervision**
**(All Defendants)**

84. Plaintiff realleges and incorporates by reference very allegation stated above as if fully stated herein.

85. Defendant UNIVERSITY had a statutory and common law duties, screen, test, and hire competent individuals who would not discriminate against a woman because of her sex.

86. The conduct described herein would not have occurred had the University properly trained its employees.

87. Such conduct does not occur absent the negligence of the UNIVERSITY.

88. When Plaintiff complained to the Title IX officer at the University, nothing was done to investigate or discipline the culpable parties.

89. Defendant's acts and omissions as set forth herein breached those duties. Defendant UNIVERSITY is liable to Plaintiff due to respondeat superior liability.

90. Additionally, under California Evidence Code § 669, the negligence of defendants may be presumed for the reason that:

    i. Defendants, and each of them, violated the civil rights statutes of this State and the United States;

    ii. The violations proximately caused injury to plaintiff;

    iii. The injuries to plaintiff were occurrences of the nature which the statutes are designed to prevent; and

    iv. Plaintiff is a member of the class of persons whose protection these statutes were adopted.

91. All Defendants knew or should in the exercise of reasonable care have known, that the foregoing conduct would cause plaintiff to suffer severe emotional distress.

92. As stated herein, all Defendants were agents of UNIVERSITY. The conduct of Defendants as herein alleged, was done within the course and scope of that agency, and the aforementioned acts were foreseeable and committed by use of their authority as by use of their authority as managerial staff of UNIVERSITY, such that Defendant UNIVERSITY is liable to plaintiff based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

93. Defendant UNIVERSITY despite actual knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved and ratified the acts, omissions and misconduct of its agents and employees.

94. In doing each and all of the acts and omissions herein alleged, all Defendants engaged in a course of conduct which was grossly negligent, extreme and outrageous. All Defendants engaged in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to plaintiff.

95. As a result of the negligence of Defendants, and each of them, plaintiff was injured in the amount of proof.

96. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interests, attorneys' fees and for such other and further relief as the Court shall deem just and proper

**JURY TRIAL DEMAND**

Plaintiffs demand a jury trial in this matter.

## PRAYER

WHEREFORE, plaintiffs prays for judgment against the defendants as follows:

1. General damages according to proof against all defendants;

2. Special damages according to proof against all defendants;

3. Punitive damages according to proof against the individual defendants;

4. Attorneys' fees pursuant to statute against all defendants;

5. Costs of suit; and

6. For such other and further relief as the court deems appropriate.

DATED: June 14, 2019

*/s/ Seth L. Goldstein*
Seth L. Goldstein